UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMIE SANTMYER, ) | |
| ) | |
| Plaintiff, ) | Case No. 22-cv-5636 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| SGT. ENCARNACION CORTEZ and ) | |
| SHERIFF TOM DART, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jamie Santmyer, a detainee at Cook County Jail, faced significant problems with his cellmates. The first cellmate threatened to beat him up, so Santmyer asked for a relocation. As requested, Santmyer received a new cellmate. Unfortunately, things went from bad to worse. The second cellmate beat him up.

Santmyer filed two grievances, and received a response to each grievance from the Cook County Department of Corrections. But Santmyer did not appeal either grievance. Instead, he filed the lawsuit at hand, on a *pro se* basis. The complaint claims that the Sheriff and others failed to protect him.

Defendants moved for summary judgment, arguing that Santmyer had failed to exhaust his administrative remedies. For the reasons that follow, the motion for summary judgment is hereby granted.

### Local Rules

Before diving into the facts, the Court needs to begin with the Local Rules. The Local Rules create a procedure for how to move for summary judgment, and how to respond to a

motion for summary judgment. The Local Rules exist for good reason, and create an orderly process. The punchline is that Santmyer's submission did not comply with the Local Rules.

Local Rule 56.1 governs motions for summary judgment, and responses. A party moving for summary judgment must submit a memorandum of law and a statement of material facts. *See* L.R. 56.1(a). The party must submit a statement of facts that lists each fact, one by one, in "concise numbered paragraphs." *See* L.R. 56.1(d)(1). A citation to the record must support each fact. *See* L.R. 56.1(d)(2).

In response, the opposing party must file (1) a memorandum of law; and (2) a response to the "LR 56.1(a)(2) statement of material facts that complies with LR 56.1(e)[.]" *See* L.R. 56.1(b)(2). The response to the movant's statement of facts must "consist of numbered paragraphs corresponding to the numbered paragraphs" in the movant's statement of facts. *See* L.R. 56.1(e)(1).

The Local Rules basically require a point-by-point, fact-by-fact, paragraph-by-paragraph response. So, the non-moving party must restate and then respond to paragraph 1 of the statement of facts, and then must restate and respond to paragraph 2, and so on. That way, the Court can go one fact at a time, and figure out if there is any real dispute about any important facts.

Lots of cases involve parties who do not have a lawyer. And lawsuits can be unfamiliar territory for laypeople. No one wants *pro se* litigants to get trapped in the Land of Confusion. So the Local Rules give special help to *pro se* litigants. Local Rule 56.2 requires parties to serve *pro se* litigants with a special notice that flags the rules and explains the process.

The Local Rule 56.2 Notice "is meant to help explain the summary judgment process[.]" *See* L.R. 56.2. It offers *pro se* litigants step-by-step instructions. *Id.* In other words, the notice

gives *pro se* parties "clear instructions about what they need to file, and how they need to do it." *See Zhang v. Schuster*, 2022 WL 615015, at *1 (N.D. Ill. 2022).

The notice also warns *pro se* litigants that the stakes are high. It spells out that if a *pro se* litigant fails to respond to a fact offered and supported by the movant, "the judge may decide" that the *pro se* party "admitted" the fact. *See* L.R. 56.2.

*Pro se* litigants must strictly follow the rules. "Substantial compliance" is "not enough." *See Zhang*, 2022 WL 615015, at *2 (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)); *see also Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) (per curiam) ("[E]ven *pro se* litigants must follow procedural rules."). Following rules isn't always easy, but courts can't have different rules for different groups of people. Instead, the Local Rules require the same thing from everyone, but extend a helping hand to *pro se* litigants.

Defendants followed the rules. They filed a motion for summary judgment, a supporting brief, and a statement of undisputed facts. The statement of facts consisted of 38 numbered paragraphs. *See* Defs.' Statement of Facts (Dckt. No. 31). Defendants also served a notice under Local Rule 56.2 that explained to Santmyer how to respond. *See* Rule 56.2 Notice (Dckt. No. 33).

This Court then set a briefing schedule. *See* 7/14/23 Order (Dckt. No. 34). In its Order, the Court called attention to the Local Rules, and encouraged Santmyer to "pay special attention" to Local Rule 56.1. *Id.* The Order forewarned that if Santmyer didn't follow the rules, the Court could "deem[] certain facts as undisputed." *Id.* So, the Court encouraged Santmyer to "give a close read to the Local Rule 56.2 notice." *Id.*

In response, Santmyer filed two handwritten documents. The first document, which the Court will call the Statement, is 15 pages long. *See* 8/3/23 Statement (Dckt. No. 35). The

3

second document is a Memorandum of Law.  *See* 8/3/23 Mem. (Dckt. No. 36).  It consists of two handwritten pages, followed by a collection of exhibits.

The Statement began with Santmyer conceding that he had "no idea where or what questions I am supposed to admit or deny."  *See* 8/3/23 Statement (Dckt. No. 35).  He continued: "Most [of] this I have already answered.  I have been doing the defendants' job for them proving exhaustion of remedies."  *Id.*  And then: "defense counsel is making a mockery of the court, procedures, policies, and my rights."  *Id.*

"I have been beat up, my property taken, dealing with crazy cellmate after another emotionally drained, physically drained.  I just want this remedied properly not as a slap to my dignity.  What happened is wrong."  *Id.*  "This is hard dealing with this over and over again its like reliving a nightmare that won't end.  I asked for a remedy all I got was more problems."  *Id.*

Then, Santmyer included a page titled "Answers to LR 56.1."  *Id.* at 3.  Under the title, Santmyer declared that he did "not understand" what he was "supposed to do."  *Id.*

The next three pages of Santmyer's filing gave citations to caselaw about the exhaustion of administrative remedies.  *Id.* at 4–6.  It is clear that Santmyer put care into his legal research, and gave the process his best shot.

The next seven pages begin with the heading "Reply to Exhaustion and other Evidence of my Exhaustion."  *Id.* at 7.  The pages seem like a hybrid between a memorandum of law and a Rule 56 statement of facts.  *Id.* at 7–14.  Santmyer numbered the first paragraph.  *Id.* at 7.  But he didn't number any others.  *See id.* at 7–14.

In two instances, it seems like Santmyer tried to respond to Defendants' statement of facts.  *See id.* at 7 ("[Q]uestion 11 say[s] inmate [g]rievance [p]rocedure . . . was available to . . . me . . . . [T]hat is [f]alse I [n]ever was given one or aware of one.").  But Santmyer didn't cite

4

record evidence to support his denials, as required by the Local Rules. See L.R. 56.1(e)(3) ("To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact[.]").

Then, the response seemed to veer toward territory resembling a memorandum of law. Santmyer summarized the case law and argued that any failure to exhaust was because jail officials "misle[]d" him. See 8/3/23 Statement, at 8 (Dckt. No. 35).

The Statement ended with Santmyer giving a factual narrative. Santmyer recounted what happened to him. But he did not put the facts into numbered paragraphs, and he did not support his facts with citations to the record, either. Santmyer also did not respond to Defendants' statement of facts. See id. at 10, 13. Santmyer interjected the facts with complaints about the summary judgment process, accusing Defendants of trying to "bur[y]" him under "all this paperwork." Id. at 10.

In the second document, the "Memorandum of Law," Santmyer recounted the facts again. He seemed to argue that the Jail didn't give him a "chance to [f]ix or [f]igure out [a]bout exhaustion of [r]emedies." See 8/3/23 Mem., at 1 (Dckt. No. 36). He included a copy of a law journal article about exhaustion, which he marked up with underlines, stars, and hearts to grab the Court's attention. See, e.g., id. at 16, 26.

A few weeks later, Santmyer submitted an amended complaint and a motion for an attorney, too. See Am. Cplt. (Dckt. No. 38); Mtn. for Attorney (Dckt. No. 39). He also mailed a letter stating that he answered the "same question" "over and over." See 9/21/23 Statement, at 1 (Dckt. No. 41). And again, Santmyer alleged that Defendants were "[a]bus[ing]" him "with paperwork." Id. at 2.

5

The Court struck the amended complaint because Santmyer did not have permission to file one. *See* 9/22/23 Order (Dckt. No. 40). The Court also denied Santmyer's motion for an attorney because, among other things, Santmyer did not show that he looked for an attorney on his own. *Id.*

Then Santmyer sent a letter. Santmyer complained about his confinement conditions – he alleged that someone tried to poison him. *See* 10/16/23 Letter, at 1 (Dckt. No. 42). He asked the Court to "help" him and others "[h]ave a voice." *Id.* Santmyer signed the letter, stating that his "life matters." *Id.* at 2.

The Court responded, noting that it "agrees with that sentiment." *See* 10/30/23 Order (Dckt. No. 43). But, the Court explained, it could not act on a mere letter. *Id.*

Santmyer sent another letter. He stated that the Jail is a "place [where] you speak up [and] you [g]et [r]etaliated against." *See* 11/13/23 Letter, at 1 (Dckt. No. 44). He repeated that he "exhausted [a]ll remedies of [a]ll issues." *Id.* at 2.

Santmyer followed up. In this letter, Santmyer thanked the Court for its time. *See* 11/20/23 Letter, at 1 (Dckt. No. 45). He also told the Court that he never exhausted his remedies "for the poisoning." *Id.*

In sum, Santmyer filed several submissions. But he did not respond to the motion for summary judgment in a manner that complied with the Local Rules. *See, e.g.*, 8/3/23 Statement, at 3 (Dckt. No. 35).

This Court is sympathetic to the challenges that Santmyer faced as a *pro se* litigant, trying to navigate his way through unfamiliar legal terrain. That journey is especially difficult for anyone who is incarcerated. It is not easy to create legal filings from prison.

But the Local Rules apply to everyone. *See Robinson v. Hayes*, 2022 WL 16856391, at *2 (N.D. Ill. 2022). "Without boundaries, there is confusion, conflict, and chaos." *See Slabon v. Sanchez*, 2021 WL 4146909, at *7 (N.D. Ill. 2021). "A scrambled response that is untethered" to a defendant's statement of facts "interferes" with the Court's ability to "see what is at issue, and what is not." *Id.* at *4.

Santmyer didn't follow the rules. Remember, Santmyer had to respond to Defendants' statement of material facts. *See* L.R. 56.1(b)(2). The response had to "consist of numbered paragraphs corresponding" to Defendants' numbered paragraphs. *See* L.R. 56.1(e)(1). Each numbered paragraph was supposed to "set forth the text" of Defendants' asserted fact and respond. *Id.*

Each response to each fact was also supposed to "admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." *See* L.R. 56.1(e)(2). If Santmyer wanted to dispute a fact, he had to "cite specific evidentiary material." *See* L.R. 56.1(e)(3). And if Santmyer wanted to offer new facts, he needed to file a statement of additional facts. *See* L.R. 56.1(b)(3).

Santmyer did not do those things. He did not respond to Defendants' facts on a paragraph-by-paragraph basis. He did not cite admissible evidence when he denied Defendants' facts, or when he told his own story. *See* 8/3/23 Statement (Dckt. No. 35).

As a result, the Court accepts all properly supported facts offered by Defendants. *See* L.R. 56.1(e)(3) ("[F]acts may be deemed admitted if not controverted with specific citations to evidentiary material."); *Robinson*, 2022 WL 16856391, at *2.

Before getting to those facts, it is important to keep three points in mind.

7

First, Defendants moved for summary judgment on the ground that Santmyer did not exhaust his administrative remedies. *See* Defs.' Mem., at 1 (Dckt. No. 32). Sometimes the Court needs to hold an evidentiary hearing to decide disputed facts underlying exhaustion issues. *See Robinson*, 2022 WL 16856391, at *2 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). But there are no disputed facts here, because Santmyer didn't follow the Local Rules.

Second, Santmyer's failure to properly respond to Defendants' motion does not mean that Defendants are automatically entitled to summary judgment. Far from it. Defendants still must show that summary judgment is proper considering the undisputed facts viewed in the light most favorable to Santmyer. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

Third, and most importantly, a critical fact jumped out when the Court reviewed the materials. Santmyer never claimed that he did, in fact, appeal the denial of his grievances. If Santmyer had made that assertion – but failed to back it up in a way that complied with the Local Rules – then this Court would have circled back with Santmyer. This Court likely would have given him an explanation of what he needed to do, and given him another opportunity to comply. After all, the case is about getting beat up in prison.

But Santmyer never claimed that he appealed the denial of the grievances. So, this Court is not hanging its hat on a technicality, meaning technical non-compliance with the Local Rules.

Here's the key point. Putting the Local Rules aside, this Court has no reason to think that Santmyer exhausted his administrative remedies by appealing. Defendants offered evidence that Santmyer never appealed, and Santmyer never claimed that he *did* appeal.

8

**Background**

In May 2021, Cook County Jail booked pretrial detainee Jamie Santmyer. *See* Defs.' Statement of Facts, at ¶¶ 7–8 (Dckt. No. 31). About six months later, on December 2, 2021, Santmyer filed a grievance with the Jail. *Id.* at ¶ 24.

Before getting into the details, the Court starts with some background about the Cook County Jail grievance system. The Jail has a formal "Inmate Grievance Procedure." *Id.* at ¶ 11. The Inmate Handbook explains the procedure. *Id.* at ¶¶ 12–13.

To start the grievance process, an inmate fills out a grievance form. *Id.* at ¶ 14; Handbook, at 40 (Dckt. No. 31-3). The inmate must state the date, location, and time of the event in question. *See* Defs.' Statement of Facts, at ¶ 14 (Dckt. No. 31). The inmate must also name or identify anyone who contributed to the problem (according to the inmate). *Id.*

After completing the form, the inmate needs to file it by giving it to a correctional rehabilitation worker or a correctional supervisor during daily rounds. *Id.* at ¶ 15.

At that point, the Jail has 15 business days to respond. *Id.* at ¶ 19. When the Jail responds, the clock starts again.

An inmate must appeal the grievance response within fifteen days of receiving it to exhaust his administrative remedies. *Id.* at ¶ 20. That 15-day deadline appears on the grievance form itself: "To exhaust administrative remedies, grievance appeals must be made within 15 calendar days of the date the inmate received the response. An appeal must be filed in all circumstances in order to exhaust administrative remedies." *See* 12/2/21 Grievance Form, at 3 (Dckt. No. 31-5).

That process was available to Santmyer as a pretrial detainee, and he got the ball rolling. *See* Defs.' Statement of Facts, at ¶ 11 (Dckt. No. 31). In December 2021, Santmyer submitted a

9

grievance form. *Id.* at ¶ 24. He reported problems with his cellmate, Aaron Philipps. *Id.* at ¶ 26; *see also* 12/2/21 Grievance Form, at 2 (Dckt. No. 31-5).

Santmyer said that Philipps had threatened him. *See* 12/2/21 Grievance Form, at 2 (Dckt. No. 31-5). Specifically, Philipps told Santmyer that Philipps would "knock" Santmyer "out on the floor." *Id.* So, Santmyer said that he asked to move cells because he felt like his "life was in danger in the cell with" Philipps. *Id.*

The complaint provides more details about what happened. (True, the complaint isn't evidence. But the Court offers it to provide more background about the case.) Santmyer had a "verbal confrontation" with Philipps because Philipps was moving his belongings without permission. *See* Cplt. (Dckt. No. 7, at 5 of 9). Philipps responded that "he would knock [Santmyer] out and then violently rape [him] in front of two witnesses." *Id.*

That's when Santmyer requested a new cellmate. According to the complaint (again, which isn't evidence), Santmyer was taken to a visitation room to talk with a supervisor. The supervisor, Sergeant Encarnacion Cortez (a defendant), said that if Santmyer kept "causing trouble he would kick [Santmyer] out of protective custody." *Id.*

The Jail responded to the grievance. *See* 12/2/21 Grievance Form, at 3 (Dckt. No. 31-5). The Jail's response stated that Santmyer's "cell assignment was changed" the day Santmyer submitted the form, and that Santmyer had told a sergeant making rounds that the "issue was resolved." *Id.*

That response started the 15-day clock ticking on any appeal. But Santmyer did not appeal the response to the grievance. *Id.*; *see also* Defs.' Statement of Facts, at ¶ 29 (Dckt. No. 31).

10

About four months passed. In April 2022, Santmyer submitted another grievance form. *See* Defs.' Statement of Facts, at ¶ 30 (Dckt. No. 31). He reported troubles with his new cellmate, Devonsay Jackson. *Id.* at ¶¶ 32–33; *see also* 4/22/22 Grievance Form, at 2 (Dckt. No. 31-6).

Once again, the complaint includes more details than the grievance form. According to the complaint, Santmyer allegedly told Sergeant Cortez that there were troubles on the horizon because Jackson had "problems" sharing a cell with Santmyer. *See* Cplt., at 5 (Dckt. No. 7). In response, Sergeant Cortez allegedly gave Santmyer an ultimatum: stay in the cell or be kicked out of protective custody. *Id.*

Santmyer says that he "wrote request slips and grievances [a]bout being move[d] some place else." *Id.* He "asked to be moved before the [a]ttack happen[ned] so it wouldn't happen." *Id.* at 6. But "nothing was done." *Id.*

The grievance claimed that Jackson attacked him, by hitting Santmyer in the head over and over. *See* 4/22/22 Grievance Form, at 2 (Dckt. No. 31-6). The punches left lumps and bruises. *Id.* Santmyer added that a jail official – Officer Garcia – had asked whether Santmyer needed medical treatment. *Id.*[1]

---

[1] Defendants attached other grievances that Santmyer submitted before filing this lawsuit to their Statement of Material Facts. *See, e.g.*, Defs.' Statement of Facts, at ¶ 38 (Dckt. No. 31); Plaintiff's Non-Compliant Grievances (Dckt. No. 31-8). From this Court's review, two of those grievances mention Santmyer's altercation with Jackson. The grievances complain that Santmyer's belongings were stolen from his cell. *See* 5/2/22 Grievance, at 6 (Dckt. No. 31-8) ("I was [a]ssau[l]ted by Devonnsha Jackson. When I came [b]ack . . . [a]ll my stuff was [g]one . . . . I need my stuff[.]"); 5/16/22 Grievance, at 8 (Dckt. No. 31-8) ("An inc[i]dent happened . . . witch lead [sic] me to be tak[en] to Cermack hospital. While I was there my commissary was stolen by Mr. Jackson."). But Santmyer didn't sue about the alleged theft. *See* Cplt., at 5–6 (Dckt. No. 7). So, the Court sets those particular grievances aside. *See Bowers v. Dart*, 1 F.4th 513, 517–18 (7th Cir. 2021) ("This disconnect between the grievance and complaint, the district court determined, meant that [Plaintiff] had failed to exhaust his administrative remedies. The district court got this right.").

11

The Jail responded to the second grievance. *See* Defs.' Statement of Facts, at ¶ 34 (Dckt. No. 31). The Jail stated that the "safety and security of detainees" like Santmyer is "of the utmost importance," but "incidents" like what happened to Santmyer were "unpredictable." *See* 4/22/22 Grievance Form, at 5 (Dckt. No. 31-6). The response concluded by stating that the officer's actions were "within policy." *Id.*

Once again, the 15-day clock started ticking after that response. But Santmyer did not appeal the response to the second grievance. *Id.*; *see also* Defs.' Statement of Facts, at ¶ 35 (Dckt. No. 31).

Instead, Santmyer filed a *pro se* complaint, bringing a failure-to-protect claim under 42 U.S.C. § 1983. *See* Cplt., at 1 (Dckt. No. 7). He named Cook County Department of Corrections Sergeant Encarnacion Cortez, Cook County Sheriff Thomas Dart, and John Doe as Defendants in their personal and official capacities. *Id.* at 2, 8.

The complaint is about the incidents described in the grievance forms from December 2021 and April 2022, meaning the confrontations with cellmate Philipps[2] and cellmate Jackson. *Id.* at 5.

Defendants answered the complaint, and then filed a motion for summary judgment. They argue that Santmyer failed to exhaust his administrative remedies. *See* Mtn. (Dckt. No. 30).

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] Santmyer spells his former cellmate's last name as "Philps" in the complaint. *See* Cplt., at 5 (Dckt. No. 7). He uses "Philipps" in the grievance form. *See* 12/2/21 Grievance Form, at 2 (Dckt. No. 31-5). The Court uses "Philipps."

12

law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

Defendants move for summary judgment based on a lack of exhaustion. *See* Defs.' Mem., at 1–2 (Dckt. No. 32). A prisoner's failure to exhaust administrative remedies is an affirmative defense. *See Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022). Defendants have the burden of proof. *Id.*

## Analysis

The undisputed facts confirm that Santmyer did not appeal the denial of his grievances. The lack of an appeal means that he did not exhaust his administrative remedies. And the lack of exhaustion means that this lawsuit is premature.

The Prison Litigation Reform Act declares that "[n]o action shall be brought with respect to prison conditions under section 1983" by a prisoner confined in a correctional facility until "administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a).

Put differently, there is only one way to go: "exhaustion first, lawsuit second." *See Robinson*, 2022 WL 16856391, at *4. Detainees cannot "run straight to the courthouse when something is amiss." *Id.* The "first stop" is the Jail's dispute resolution process. *Id.*

To exhaust administrative remedies, a detainee must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). In other words, a detainee must "take each of the steps" that the Jail's administrative rules require. *See Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022) (citation omitted).

So, if an administrative appeal is one of the steps, a detainee must take it. He must appeal within the Jail to exhaust his administrative remedies. *See, e.g.*, *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) ("[The prisoner] needed to comply with the [Cook County Department of Corrections] grievance process . . . he had to have appealed within 14 days of receipt of any administrative response to the grievance."); *Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005) ("The record makes clear that [the prisoner] never appealed fully the denial of his grievances and, therefore, failed to exhaust his administrative remedies.").

In other words, a prisoner cannot start driving down the grievance road and careen off early to speed into federal court. If the administrative road includes appeals, the prisoner must traverse it. There is no off-ramp with a shortcut to the federal courthouse.

Here, there is no dispute about the facts. Cook County Jail's administrative grievance process includes appeals. The grievance forms state that an inmate must appeal the Jail's

14

response to his submitted grievance form to exhaust his administrative remedies. *See* Defs.' Statement of Facts, at ¶ 20 (Dckt. No. 31); *see also* 12/2/21 Grievance Form, at 3 (Dckt. No. 31-5) ("To exhaust administrative remedies, grievance appeals must be made within 15 calendar days of the date the inmate received the response. An appeal must be filed in all circumstances in order to exhaust administrative remedies.").

Santmyer did not appeal the Jail's response to either of his grievances. *See* Defs.' Statement of Facts, at ¶¶ 29, 35 (Dckt. No. 31). So, he did not reach the end of the road when it came to administrative remedies. Santmyer did not reach the finish line by completing the administrative process, so he did not exhaust. *See Burrell*, 431 F.3d at 284; *see also Robinson*, 2022 WL 16856391, at *6 ("An appeal is a separate, necessary step in the [Jail's] grievance process, but [Plaintiff] skipped right over it. As a result, [Plaintiff] failed to exhaust administrative remedies by failing to appeal.").

Santmyer resists this conclusion. But he doesn't argue that he did, in fact, appeal. Instead, he seems to argue that the Court should excuse his failure to exhaust. *See* 8/3/23 Statement, at 11 (Dckt. No. 35). According to Santmyer, the Jail never "explained" that Santmyer "had to" exhaust or "[h]ow" to exhaust. *Id.* Santmyer says that he "didn't think [he] had to do any[]thing [e]lse." *Id.*

True, sometimes courts excuse a prisoner's failure to exhaust administrative remedies when the administrative process was unavailable to that prisoner. *See, e.g.*, *Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."); *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (collecting cases); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement . . . a remedy becomes unavailable if prison employees

15

do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.") (cleaned up).

But here, the administrative process was available. The Jail's Inmate Grievance Procedure was available to Santmyer. *See* Defs.' Statement of Facts, at ¶ 11 (Dckt. No. 31) ("The CCDOC maintains a formal Inmate Grievance Procedure that is available to all inmates at the Cook County Jail and was available to Plaintiff . . . during his incarceration.").

There is no admissible evidence in the record suggesting that the officials misled Santmyer about the availability of an appeal. They didn't frustrate his ability to appeal, for example, by standing in his way or giving him misinformation about what he needed to do. Santmyer could have appealed, so he had to appeal.

Santmyer may believe that he has gone over these issues with the staff at the Jail enough already. That feeling is understandable. But Congress decides when an inmate has done enough. And Congress decided that an inmate hasn't done enough if that inmate has not fully exhausted all available administrative remedies.

In sum, Santmyer did not exhaust the administrative grievance process. His failure is not excused. So, Defendants are entitled to summary judgment. *See Robinson*, 2022 WL 16856391, at *6; *see also* 42 U.S.C. § 1997e(a).

## Conclusion

Defendants' motion for summary judgment is granted. Santmyer's claims are dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[A]*ll* dismissals under § 1997e(a) should be without prejudice.") (emphasis in original). That is, the Court is not rejecting the claims on the merits. The Court is simply ruling that the claims are premature because Santmyer did not exhaust his administrative remedies.

Date: January 18, 2024

Steven C. Seeger
United States District Judge